**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:26-MJ-300 (LRV) |
| PATRICK STEVEN YAROCH, | |
| *Defendant*. | |

**MOTION OF THE UNITED STATES
FOR DETENTION ORDER**

### I.  INTRODUCTION

The United States, through undersigned counsel, submits this brief in support of its motion to detain the defendant, Patrick Yaroch. The defendant poses a serious risk of flight, or non-appearance, and the defendant poses a significant danger to the community if released from custody pretrial. *See* 18 U.S.C. § 3142. There are no conditions that can be fashioned for his release at this time.

As alleged in the affidavit attached to the complaint, the defendant was a former supervisor within the Federal Bureau of Investigations (FBI). The defendant held a Top-Secret clearance with sensitive compartmented (SCI) access. By the nature of his supervisory position with the FBI, he had access to highly sensitive and classified information. By his own admission, he misused classified information multiple times during the past 18 months to commit crimes. In short, the defendant's criminal conduct was not the result of a singular lapse in judgment, but rather repeated choices to break the law and abuse his position of trust within the government.

1

The charges lodged against the defendant carry significant penalties. The very nature of these charges also calls into question the defendant's trustworthiness. Furthermore, the evidence that law enforcement uncovered during the execution of the search warrant show that he was taking steps to build a life in Portugal. Specifically, he traveled to Portugal after he stole the cryptocurrency, made arrangements to travel to Portugal again, and repeatedly asked ChatGPT questions about his desire to live abroad.

The defendant's actions highlight how he does not follow rules set by others. He failed to report his international travel at least two times during the past few months. The fact that he failed to follow very well-known government rules for reporting travel, despite working as an FBI agent for years in the counterintelligence field and holding a security clearance is alarming. Of all people, the defendant should know why it is important for specified government officials to report their travel. From the airline records discussed in the affidavit, the defendant was gone for approximately 10 days during the May 2026 unreported trip. Ten days is a significant amount of time. We do not know all the places he traveled to or who he met with during that time. The fact that he chose to travel internationally at least twice without reporting it during the middle of his criminal conduct is telling and highlights Yaroch's sophistication compared to other criminal defendants.

## II. LEGAL STANDARD

For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of others or the community, is sufficient; both are not required. *United States v. Stewart*, No. 01-4537 19 F. App'x 46, 48–49 (4th Cir. 2001); *United States v. Mallory*, 268 F. Supp. 3d 854, 861 n. 14 (E.D. Va. 2017) (accord). With regard to the risk of flight as a basis for detention, the government must prove by a preponderance of the evidence

that no combination of conditions will reasonably assure the defendant's presence at future court proceedings. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir.1985); *see also United States v. Medina*, 775 F.2d 1398, 1402 (11th Cir.1985) (noting that, under the Act, the clear and convincing evidence standard applies only to a determination that "no condition or combination of conditions will reasonably assure the safety of any other person and the community").

Foreign travel, lack of community ties, lack of trustworthiness, and an incentive to flee can constitute preponderant evidence of a risk of flight. *See, e.g., United States v. Mallory*, 268 F. Supp. 3d 854, 864–65 (E.D. Va. 2017) (despite home ownership in district, defendant ordered detained because underwater on the house, foreign travel and contacts, and no incentive to stay); *United States v. Karmann,* 471 F. Supp. 1021, 1022 (C.D. Cal. 1979) (ordering detention on the basis that *"*the Court concludes that the defendant by reason of his conduct has made a mockery of the income tax laws and the regulations issued thereunder and has indicated he will continue to do so in defiance of the law").

Danger to the community can be more than a mere threat to a witness or physical harm. . *See, e.g., United States v. Reynolds*, 956 F.2d 192 (9th Cir.1992) ("danger may, at least in some cases, encompass pecuniary or economic harm"); *United States v. Parr*, 399 F.Supp. 883, 888 (W.D.Tex.1975) ("The 'danger to ... the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large."). *United States v. DeSimone*, 2009 WL 904688, at *2 (citing *United States v. Persaud*, No. 05–cr–368, 2007 WL 1074906, at *1 (N.D.N.Y. Apr. 5, 2007); *United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979). Here, the defendant's access to highly classified information, combined with his acknowledged theft of that

information for personal gain against an adversarial nation, should raise serious alarms about various dangers the community could face if the defendant is released now.

Under 18 U.S.C. § 3142(g), the factors to be considered in determining whether detention of a defendant or release on conditions is warranted include: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant; and (iv) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. The Rules of Evidence do not apply at such a detention hearing. *See* Fed. R. Evid. 1101(d)(3).

## II. ARGUMENT AND SUMMARY OF EVIDENCE

There is a preponderance of evidence that no combination of conditions will reasonably assure the defendant's presence at future court proceedings. The facts and circumstances at issue here present a strong case to detain the defendant. The defendant poses a flight risk due and a danger to the community.

### 1. 18 U.S.C. § 3142(g) Factors Analysis

The nature and circumstances of the offense, and the seriousness of the danger to the community posed by the defendant's release are serious and weigh in favor of detention. The defendant has a history of misusing classified information for his own enrichment. The defendant's illicit conduct has the potential to cause international ramifications that can affect various parts of the nation, and the Court should weigh the nature, circumstance, and seriousness accordingly when deciding on the defendant's release.

The weight of the evidence against the defendant is strong. He confessed to stealing the cryptocurrency from the adverse nations' wallets. The defendant has been charged with two felonies that carry a maximum penalty of 10 years of incarceration each and he is facing a

guideline range of at least 41 to 51 months.[1]  *See United States v. Duranseau*, 26 F.3d 804, 808 (8th Cir. 1994); *United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987) (both the Eighth and Fifth Circuits finding that possible sentences of ten years are sufficient to indicate that the offense is serious).

Yaroch is a very sophisticated defendant. The criminal conduct described in the affidavit required a great deal of planning and precise in its execution. Moreover, as a former special agent, he knows the databases and systems that the government uses to track individuals' flights and movements. He is familiar with customs and border norms in ways that many are not. As other fugitive cases have shown, criminal defendants are still sometimes able to escape and evade detection even after being placed on electronic monitoring. Of all the defendants that appear before this Court, Yaroch is more capable than most of evading his pretrial release supervision and fleeing from justice.

Furthermore, the government particularly believes that the defendant's wife would be an inappropriate third-party custodian because the criminal conduct in question occurred while Yaroch was in a relationship with his wife. She simply does not appear to have the ability to appropriately supervise this sophisticated defendant. Furthermore, Yaroch had made plans for he, his wife, and his child to travel together to Portugal and he admitted to law enforcement that he hoped his wife would still able to travel to Portugal.

---

1 This is a conservative calculation of his guidelines range is subject to change later. This guideline range calculation is based on the following assumptions: that the defendant is found to be in a criminal history category I, is sentenced under the U.S.S.G.'s 2B1.1 section, with a base offense level of 6 and 14-level increase to reflect a loss amount of around a million dollars. This calculation also accounted for a 2-level increase for a sophisticated means enhancement, another 2-level increase from the application of an abuse of trust enhancement and a 2-level deduction for the defendant's zero-point offender status.

Finally, as discussed throughout this motion, the defendant previously had access to some of the nation's most secret and important information. He then chose to misuse this information to steal money, for his own financial gain. There is a great risk to the community that the defendant will repeat this conduct or choose to misuse the classified information in other ways.

2.      Risk of Flight

The defendant poses a flight risk for several reasons. The defendant has been researching different options for living abroad as shown by his ChatGPT history. Moreover, the defendant was taking concrete steps towards leaving the United States as shown by his purchase of plane tickets to Portugal and the power-of-attorney documents that investigators uncovered during the search of his residence.

While the government was able to seize a large amount of cryptocurrency from the defendant last Friday, with his consent, the defendant has other assets still available to him. Furthermore, the government has not finished its examination of the materials that were seized from the defendant, and it is unclear if there are other cryptocurrency or even other traditional bank accounts out there that the government does not know about yet.

Pretrial release in this case on the defendant's promise that he will appear should give this Court little confidence that the defendant would abide by any conditions imposed by the court should the defendant determine that he did not want to abide by them. As shown by the defendant's failure to follow the travel rules imposed by the FBI, he has a history of failing to follow rules.

If the defendant chooses not to appear, then the only remedy available to the United States would be to designate him as a fugitive and ask the U.S. Marshals to attempt to locate and arrest him in another country. This process could take years, depending on where the defendant is eventually located, which would thereby delay the criminal process, which has already begun, until

6

some unknown time in the future. This would result in extreme prejudice to the United States and further, indeterminable delay to the pending criminal case.In short, the government has carried its burden by a preponderance of the evidence. The defendant cannot be trusted to appear in court when the full reality of the charges, and their potential penalties become clear to him.

3.    <u>Danger to the Community</u>

The defendant poses a continuing danger to the community. By the nature of his position with the FBI and detail to an agency within the U.S. intelligence community, he had access to highly specialized and secret information. As discussed earlier in this motion, the defendant has already shown that he is willing to misuse classified information to enrich himself. The defendant's ability to harm society if he continued to misuse classified information and state secrets to enrich himself while on pretrial release cannot be overstated. The defendant's criminal conduct has the potential to cause serious international consequences that could potentially affect the rest of society whether by continuing to steal from the adversary nations' wallets or by misusing the classified information in other ways.

### III.    CONCLUSION

For the foregoing reasons, the United States respectfully moves this Honorable Court to find that no conditions that can assure the appearance of the defendant and the safety of the community at this time.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

Theophani K. Stamos
First Assistant United States Attorney

By:    _____/s/_____

Kathleen E. Robeson
Russell L. Carlberg
Assistant United States Attorneys

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 4, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will serve counsel of record. I will also email this to below counsel, to chambers, and to the Pretrial Services/Probation officer.

Valencia Roberts
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

*Counsel for Defendant*

By:      _____/s/_____
Kathleen E. Robeson
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone:  703-299-3700
Email: Kathleen.robeson@usdoj.gov

9