IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:26-MJ-300-LRV-AJT |
| | ) | |
| PATRICK STEVEN YAROCH, | ) | |
| | ) | |
| Defendant. | ) | |

**RESPONSE IN OPPOSITION TO MOTION OF THE UNITED STATES FOR
REVOCATION OF RELEASE ORDER AND REVIEW OF DETENTION**

Comes now Patrick Steven Yaroch, by and through undersigned counsel, and files this response in opposition to the government's Motion for Revocation of Release Order and Review of Detention (ECF 17). In its motion, the government contends that Mr. Yaroch is such an extraordinary flight risk and danger to the community that no conditions or combination of conditions of release can protect the community and ensure his appearance in court. The government then contends, in the alternative, that a series of modification to the conditions of release should be imposed, implicitly conceding that there is in fact a set of conditions that can mitigate these risks. Detention on these charges based on dangerousness is expressly prohibited by the Bail Reform Act, the government's risk of flight arguments are vague and speculative, and the government fails to articulate how Judge Vaala's carefully crafted conditions of release are insufficient to address the government's claimed concerns. Mr. Yaroch is cooperative and contrite. There is a presumption of release in his case, and the government has not rebutted that presumption. The pretrial detention the government has been directed to seek in this matter is increasingly suggesting itself to be for an impermissible punitive purpose and this appeal should be denied.

1

I. **Danger to the Community is an Unlawful Basis under the Bail Reform Act to Detain Mr. Yaroch**

The government argues that Mr. Yaroch, a former FBI agent with an otherwise distinguished career, is a danger to the community. A dangerousness-based detention would be unlawful in this case. Section 3142(f) lists five categories of offenses that can result in detention based on "the safety of any other person and the community." They are limited to a crime of violence/terrorism, an offense carrying a life sentence or death, a 10-year felony under the Controlled Substances Act, a felony charge where the defendant has prior felony convictions, and any other felonies that involve either a minor victim or possession of various dangerous weaponry. 18 U.S.C. § 3142(f)(1)(A)-(E); *see also, United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009). Non-presumption cases not falling into these categories are eligible for detention where there is "a serious risk that such person will flee" or "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(A)-(B).

This is not a presumption-of-detention case; it is a *presumption-of-release* case. The two pending charges, 18 U.S.C. § 2314 and § 2315, transportation and receipt of stolen monies respectively, do not come anywhere close to any of the offenses that can serve as a basis for detention on dangerousness. While the government's motion at one point mischaracterizes one of the charged counts as a Controlled Substances Act statute (ECF 17 at 2, noting Mr. Yaroch is charged under "21 U.S.C. § 2315,"), this is certainly a typo. 21 U.S.C. § 2315 is not a criminal offense – it's a procedural statute. The defendant is charged under 18 U.S.C. § 2315. Accordingly, this Court, as a matter of statutory law, cannot base detention, in whole or in part, on a dangerousness analysis. The government has made no argument with respect to attempts to

obstruction justice, tamper with witnesses, or interfere with jurors. The only lawful basis for detention in this case is risk of flight under 18 U.S.C. § 3142(f)(2)(A).[1]

## II. The Risk of Flight is Imaginary and Fully Mitigated by Judge Vaala's Combination of Conditions

While the government's dangerousness argument is invalid on its face, its risk-of-flight argument is speculative and contradicted by the facts of the case. Based on the government's own allegations against Mr. Yaroch, the government had zero knowledge of Mr. Yaroch's alleged crimes until he, overcome with remorse, confessed to them. By the government's own telling, Mr. Yaroch walked himself down the path of both administrative and criminal accountability, understanding that his otherwise-distinguished career as an FBI agent was over and that he would be accepting responsibility for a crime. The government strains to articulate why it believes there is a preponderance of the evidence that Mr. Yaroch will turn on his heels from this path of accountability and now run. He could have fled upon commission of the alleged crime; he didn't. He could have simply continued to conceal the crime; he didn't. He could have fled prior to his arrest after he knew there was a criminal investigation; he didn't.

Yet the government's filing peppers scarce facts over more than a dozen pages to leave this Court with a cloud of concern over the defendant's risk of flight. But "[a] mere theoretical opportunity for flight is not sufficient grounds for pretrial detention." *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005). On this speculation, the Court should not jettison the ironclad presumption of innocence and the strong presumption against detention, and leave the defendant to suffer in pretrial confinement on an informal accusation of a life-altering

---

[1] Danger to the community was not even invoked as a detention basis at Mr. Yaroch's initial appearance, with the government instead seeking detention solely based on risk of flight. ECF 21 at 4-5.

but not life-ending crime.[2] It would be fundamentally inconsistent with the Supreme Court's decree that pretrial detention "is the carefully limited exception" and "liberty is the norm." *United States v. Salerno*, 481 U.S. 739, 750 (1987). "[D]oubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Wilder*, 797 F. Supp. 3d 642, 646 (S.D.W. Va. 2025) (quoting *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015)). Yet at every turn, the government's arguments rely on speculation and shadowy doubts.

Judge Vaala has adequately crafted a set of conditions of release appropriate to the case. To highlight that, it is worth collecting the government's alleged "bad facts" regarding flight in a single place. The government suggests that 1) Mr. Yaroch's crime required skill and planning (ECF 17 at 10); 2) it is "uncooperative" of a defendant to invoke core constitutional rights during a criminal investigation (*id.*); 3) FBI agents are trained to disappear into the night (*id.* at 11-12); 4) Portugal is some sort of rogue state where Mr. Yaroch could evade American justice (*see id.* at 2-11); 5) the case against the defendant is bullet-proof (*id.* at 12); 6) a 24-30-month guidelines sentence upon the defendant's acceptance of responsibility is a compelling reason for the defendant to abandon his extensive ties to this area and this country and flee (*id.* at 13); and 7) an uncharged hypothetical (and likely unsupportable) more serious felony (18 U.S.C. § 793), which the defendant may have first became aware of from the government's own mention of it in its detention argument, will now circuitously trigger his flight (*id.* at 13-14). These are essentially the government's arguments, and at every turn in its filing, the government fails to explain with any

---

[2] Mr. Yaroch has not been in ordinary pre-trial detention over the past week since his arrest. Because of his law enforcement background, he is completely isolated from other inmates. His hour of recreation is alone at 2:00 a.m. He gets two other hours outside of cell by himself and is otherwise in lockdown.

degree of specificity how Judge Vaala's conditions of release do not adequately address the government's alleged concern.

### a. The skill and planning involved in Mr. Yaroch's alleged crimes do not make him a flight risk.

With respect to the first point, that there was a very high level of skill and planning involved, the government's own allegations do not support that. It is the rare federal financial crime that does not involve skill and planning. But unlike pump-and-dump schemes, mortgage frauds, or foreign prince scams, Mr. Yaroch's alleged crime involved leveraging a code he had access to, logging into an online account, and transferring money from an online wallet. It was a digital pickpocketing that involved no sophisticated computer hacking, skilled manipulation of a victim, or complex financial transactions. More critically, the government fails to grapple with how Mr. Yaroch could continue to commit such a crime without his FBI access, with the court-ordered computer monitoring, and with third-party custodian supervision. In any event, the government does not connect how the manner and means of the alleged crime's commission make Mr. Yaroch more likely to flee.

### b. Invoking Constitutional rights is firmly protected and not a basis for detention.

Counsel won't belabor the second point – the government's allegation that the defendant was "uncooperative" by invoking his rights. In support of this argument, the government does not offer a single point of authority. It would be unprecedented for this Court to conclude that a defendant invoking Constitutional rights, including the right to silence, the right to be free from unreasonable searches, or the right to counsel, is in any way suggestive of a risk of flight. Such an argument borders on meritless and is dangerous to numerous core legal tenets, including the presumption of innocence and the well-established rule that the invocation of a Constitutional right cannot form the basis for punitive government action. Based on the government's own allegations,

the FBI knew *nothing* of Mr. Yaroch's alleged crimes until he disclosed them. That's full cooperation that would have been on-going but for the government's decision to rush head-long into an arrest.

### c. Former FBI agents are not uniquely skilled at fleeing.

With respect to the third point, the defendant's experience as an FBI agent, the government alleges that "he knows the databases and systems that the government uses to track individuals' flights and movements. He is familiar with customs and border norms in ways that many are not… Of all the defendants that appear before this Court, Yaroch is among the most capable of evading his pretrial release supervision and fleeing from justice." ECF 17 at 11-12. At the detention hearing, the government went further, proffering FBI agents "are in the best position to know how to evade these Court requirements. They're in the best position to know how to leave the country, and [Mr. Yaroch] has the best skill set for that." ECF 22 at 32.

The government has proffered these allegations about FBI agents' capabilities, but despite having an FBI agent testify at the detention hearing, they never elicited a single fact to support them. As a former FBI Special Agent himself, undersigned counsel proffers that this isn't the movies and FBI agents are not Jason Bournes. At no time did undersigned counsel receive special training or experience on traveling undetected nationally or internationally, overriding computer monitoring software, arranging travel undetectable to the federal government, or otherwise absconding.[3] And once again, there is no accompanying substantive argument from the government that Judge Vaala's conditions fail to address this alleged risk. Mr. Yaroch does not

---

[3] The government analogizes to *United States v. Mallory*, 286 F. Supp. 3d 854 (E.D. Va. 2017). *Mallory* is inapplicable. Judge Ellis's decision noted that Mallory was a foreign intelligence officer "well-trained in spy tradecraft," and facing a life sentence on actual espionage charges. 286 F. Supp. 3d at 862-63, n. 19.

have a badge or creds; he does not have access to government databases; his computer use will be monitored; and once permitted to travel again, he will now wait in TSA lines with his shoes off like everyone else.

### d. Portugal is not a fugitive safe haven.

Turning to what may be the thrust of the government's flight argument, the nation of Portugal is mentioned fifteen times over the course of ten pages in the government's motion, with the implication being that Mr. Yaroch need only get out of the United States and he can rest easy there as a fugitive from American justice. As the Court is certainly aware, Portugal is a European nation and a member of the European Union with substantial intelligence and law enforcement resources. Mr. Yaroch is not alleged to be a Portuguese citizen. There are at least two extradition agreements that would ensure Mr. Yaroch's prompt return. *See* Agreement on Extradition Between the United States of America and the European Union, U.S.-E.U., June 25, 2003, T.I.A.S. No. 10-201; Instrument as Contemplated by Article 3(2) of the Agreement on Extradition Between the United States of America and the European Union Signed 25 June 2003, U.S.-Port., July 14, 2005, T.I.A.S. No. 10-201.18. And the resulting 18 U.S.C. § 3146 conviction for fleeing would carry a guidelines sentence of 10-16 months. *See* U.S.S.G. § 2J1.6(a)(2), (b)(2)(B) (establishing an offense level of 12 for failing to appear on the present charges).

This would constitute a significant potential addition the guidelines sentence Mr. Yaroch faces as charged. Mr. Yaroch has no incentive to flee to Portugal for a hot second until he is arrested by Portuguese authorities, and every incentive to remain on the path he has already consistently charted—taking responsibility for his actions.

As for the allegations surrounding the reporting of foreign travel, to be clear, Mr. Yaroch is alleged to have neglected to report a single trip to Portugal. He otherwise reported his foreign

travel. Mr. Yaroch travelled through ordinary channels on all his overseas trips, so the FBI, which has ready access to international travel records, can easily confirm that there was only one undisclosed trip. The government has not offered any evidence to the contrary. While the government alleges that Mr. Yaroch "chose not to abide" by travel reporting requirement (ECF 17 at 9), the government does not offer any proof that the administrative oversight was an intentional choice.[4]

### e. The government's entire case may fatally rely on administratively compelled statements.

With respect to the strength of the government's case, the government recites a series of facts that suggest criminal guilt in this case is a foregone conclusion. *See* ECF 17 at 12. But the government must be aware of the potentially significant *Garrity* issues at play in this case. In *Garrity v. New Jersey*, 385 U.S. 493 (1967), the Supreme Court made abundantly clear that where government employees are forced to make statements on the threat of serious adverse employment actions, such statements are not just a violation of *Miranda*, they are involuntarily compelled under the Fifth Amendment. Mr. Yaroch is alleged to have self-reported his actions to a supervisor, consistent with FBI policy, the violation of which can result in termination. He is then alleged to have complied with an instruction to file an official security report, which every FBI agent understands to be required on penalty of substantial administrative sanction, including loss of security clearance and subsequent termination. Special Agent Hope Vance, who testified at the preliminary and detention hearing, confirmed that this supervisor gave Mr. Yaroch instructions to administratively report his actions. Preliminary Hearing Transcript, ECF 22 at 13. Agent Vance, who interviewed Mr. Yaroch, also confirmed that she interviewed this supervisor, likely prior to

---

[4] The government presumably has data on the likely large of volume of travel reporting oversights by government employees with Top Secret clearances.

interviewing Mr. Yaroch. *See id*. Agent Vance also confirmed that this compelled self-report resulted in her interview of Mr. Yaroch. *Id*. at 15. It was not until near the end of that interview that FBI agents explained that the interview was a criminal one, not an administrative one. *Id*. at 16-17.[5]

At this stage, without discovery, only the government can fully evaluate the *Garrity* risks to this case, but the danger to the entirety of the government's case is not speculative. It is well-established and logical that *Garrity* compelled statements are cloaked in the very same protections as statements made with a grant of use immunity. *See, e.g., United States v. Vangates*, 287 F.3d 1315, 1320-21 (11th Cir. 2002); *McKinley v. City of Mansfield*, 404 F.3d 418, 423 (6th Cir. 2005). The trial court in this case will undoubtedly need to conduct a *Kastigar* hearing and ensure that the government's case did not use a compelled statement, even as an investigatory lead or to even alter its investigatory strategy. *See United States v. Harris*, 973 F.2d 333, 336-37 (4th Cir. 1992). At first blush, this entire prosecution may have been impermissibly based on the false appearance of an administrative investigation and statements compelled under *Garrity.* While the alleged facts clearly support the charged crimes, the Fifth Amendment privilege against self-incrimination remains sacrosanct and this case may be on extraordinarily shaky ground as a matter of law.

  **f. The charges against Mr. Yaroch are serious but nowhere near serious enough to compel him to flee.**

Finally, with respect to the seriousness of the offense, the government offers perhaps its most unserious argument. The first part of the argument suggests that the probable 41-to-51-month guidelines sentence would cause Mr. Yaroch to flee. But this calculation appears to double-count

---

[5] On information and belief, this hasty and ill-considered flipflop from an administrative investigation to a criminal investigation was likely directed by senior political appointees of the FBI and the Justice Department in a possible effort to prioritize performative publicity over process.

for the same conduct by applying two 2-point increases for the exact same discrete act and fails to account for acceptance of responsibility, which Mr. Yaroch has repeatedly demonstrated a willingness to do. In actuality, Mr. Yaroch may face a guidelines range of 24 to 30 months, with mitigating factors supporting a downward variance. Absconding could add about 50% or more time to his guidelines. The government's own argument leads to the inescapable conclusion that Mr. Yaroch does not have an incentive to flee and instead has a powerful incentive to comply with every condition of release and accept responsibility.

Perhaps recognizing this, the government dangles the specter of a far more serious crime, 18 U.S.C. § 793. Setting aside the circular logic of the allegation that Mr. Yaroch will flee because of an uncharged statute, the applicability of which he was arguably unaware of until the government mentioned it as a reason he might flee, it is difficult to see how a § 793 charge could be supported by the facts here. And the government is utterly vague about its theory, positing only "it is not an unreasonable inference to believe that the classified information [Mr. Yaroch] abused and retained was also national defense information." *See* ECF 17 at 13. Cases are not prosecuted on "not unreasonable inference[s]". If the government believes the facts here support the elements of any of the various § 793 offenses, it should say so and explain its reasoning at this time. If it cannot, it is difficult to imagine how § 793 could be charged in compliance with the Constitutional requirement of fair warning. Without more from the government, it is impossible to fully analyze the applicability of § 793, but regardless, it is not charged here, that was a deliberate decision by the government. Vague speculation about an untested legal theory pertaining to an uncharged crime should not form the basis, in whole or in part, for detention.

III.    **No Modification of Judge Vaala's Conditions is Warranted or Supported by Substantial Argument**

The government concludes its memorandum with an alternative request, implicitly undermining its position that no condition or combination of conditions can ensure Mr. Yaroch's appearances in court. They request home confinement with exceptions for legal and medical appointments and the ability to transport his child to his parents' house or to daycare,[6] location monitoring, and that Mr. Yaroch be only allowed to socialize with members of the intelligence community with the approval of Pretrial Services. ECF 17 at 16. The government offers no argument in support of the third request, and the only argument that the government offers in support of other two is that it would make the government's job easier should Mr. Yaroch illogically attempt to abscond. *See generally* ECF 17; *id.* at 15. But speculative ease for a government with substantial resources is not a part of this Court's duty to determine the *least restrictive* combination of conditions that *reasonably* assure Mr. Yaroch's appearance. *See* 18 U.S.C. § 3142(c)(1)(B).

IV.    **Conclusion**

By the government's own allegations, this entire prosecution exists because Mr. Yaroch came forward on a path of repentance and penitence to take responsibility for a single (and significant) aberration in an otherwise exemplary FBI career. Instead of following the ordinary course in these cases—conducting an administrative investigation independent of a criminal investigation and negotiating a pre-indictment resolution—the Justice Department has kicked up a cloud of dust accelerating through an administrative-to-criminal investigation flipflop, an

---

[6] Should the Court elect to impose this restrictions, Mr. Yaroch requests that he be permitted to travel to his parents' house with either parent but with or without his nine-month-old son, as his parents are presently Mr. Yaroch's third-party custodians.

unnecessary search warrant, a complaint, a SWAT team arrest, and unnecessary publicity that has resulted in the probable spillage of classified information into the news and likely further compromised a sensitive investigation. In the instant filing, the government now points to its cloud of dust and asks this Court to see it as a cloud of smoke around Mr. Yaroch, hoping the Court will detain him on the unfounded speculation that he was up to far worse. The government does not have a shred of evidence to support the idea that there is uncharged conduct out there. It asks this Court to do the illegal by detaining Mr. Yaroch on a strained theory of danger to the community, and it offers little compelling argument for why Judge Vaala's thoughtful and thorough combination of conditions cannot address the low risk of flight. For all these reasons, the government's motion should be denied in full.[7]

Respectfully submitted,

PATRICK YAROCH
*By Counsel*

 /s/ Kyle R. Boynton
Kyle R. Boynton, VA Bar 92123
K.R. BOYNTON, PLLC
108 N. Alfred Street, 1st Fl
Alexandria, Virginia 22314
571.274.6199
kyle@boynton.law

---

[7] The Court should also decline to grant a stay of its ruling, should the government signal an intention to appeal to the Fourth Circuit. Mr. Yaroch is presumed innocent and suffering in pretrial isolation. This is not just "time served." His present conditions of confinement are likely far more restrictive and damaging to Mr. Yaroch's health than confinement in a BOP camp, where he is likely to serve any eventual sentence.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 7, 2026, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of electronic filing (NEF) to all counsel of record in this case, including counsel for the government.

/s/ Kyle R. Boynton
Kyle R. Boynton, VA Bar 92123
K.R. BOYNTON, PLLC
108 N. Alfred Street, 1st Fl
Alexandria, Virginia 22314
571.274.6199
kyle@boynton.law
